IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:23-cv-00215

DORY BRENDAN HUX, Individually and as Surviving Parent of DORY BRAYLAN HUX and as Personal Representative of the Estate of DORY BRAYLAN HUX, a deceased Minor,

  *Plaintiffs*,

v.

NEUTROGENA CORPORATION; JOHNSON & JOHNSON; and JOHNSON & JOHNSON CONSUMER, INC.,

  *Defendants*.

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## I. BOTTOM LINE UP FRONT

Plaintiff purports to assert claims for wrongful death sounding in product liability, fraud, violation of North Carolina's Consumer Protection Law, and breach of implied warranty. While the circumstances surrounding Plaintiff's loss of his son (hereinafter referred to as "Decedent") are heartbreaking and tragic, Plaintiff's Complaint fails to state a claim against Defendants and must be dismissed.

Plaintiff alleges that his son's diagnosis of Acute Myeloid Leukemia ("AML") on April 16, 2021, which led to his unfortunate passing two days later, was somehow caused by alleged exposure to benzene from certain, unidentifiable Neutrogena® sunscreen products manufactured

1

by Johnson & Johnson Consumer Inc. ("JJCI"). *See* Plaintiff's Complaint, Dkt. No. 1, at ¶¶ 34, 36. However, other than asserting generalized and vague conclusions that Plaintiff himself purchased and used certain product lines of Neutrogena® sunscreen, which he coins in the Complaint, "Defective Sunscreen Products" (*id.* at ¶ 28), Plaintiff has not plausibly asserted: (1) the specific sunscreen products Decedent used (by lot, UPC number, or other identifying information), (2) that any such products actually contained benzene, and (3) that Decedent's use of those products caused his AML and ultimate passing. Notably, all of Plaintiff's allegations are based on a third-party Citizen Petition submitted to the U.S. Food and Drug Administration ("FDA") by online pharmacy, Valisure, on May 24, 2021—dated and published *after* Decedent's passing—that claimed to have tested various sunscreen products for benzene (though, not the lot from which the single can of Neutrogena® Beach Defense sunscreen Plaintiff identifies came). Plaintiff otherwise fails to plausibly assert that Decedent was actually exposed to benzene from any sunscreen product, let alone at a level and frequency that could have caused him injury. As set forth below, at least three other federal courts have found nearly-identical allegations to those asserted here insufficient to state a claim, in the absence of a causal link between a plaintiff's use of an identified benzene-containing product and his or her injury.

      Plaintiff's Complaint similarly fails as a matter of law with respect to its claims for strict liability, breach of implied warranty of fitness, and loss of filial consortium. In addition, Plaintiff's misrepresentation claim fails to meet Rule 9(b)'s heightened pleading standard. Having failed to state a claim, Plaintiff's Complaint should be dismissed.

## II. ARGUMENT

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The claims must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citation omitted). "Labels and conclusions" will not suffice. *Id.; see also*, *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (finding that to evaluate whether a claim is sufficiently stated, the court need not consider plaintiff's "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments."). The court must grant dismissal where plaintiffs have not adequately, through well-plead facts, "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Plaintiff Has Failed to Plausibly Establish Product Identification

Plaintiff's Complaint fails to adequately identify the sunscreen products Decedent allegedly used, or plausibly plead that any such sunscreen products contained benzene. Plaintiff claims he was a "brand loyal purchaser of Neutrogena products…for numerous years beginning in 2009 until late 2021," but fails to plead product identification with the specificity required to support his claims regarding his son's alleged exposure to benzene. Compl. at ¶ 28. Instead, the Complaint merely identifies three of Neutrogena®'s most popular product lines—Beach Defense, Cool Dry Sport, and Ultra Sheer—that Plaintiff himself purchased and used and describes them as the "Defective Sunscreen Products." *Id.* Importantly, despite being in the best (and possibly only) position to know the products his son used, Plaintiff only provided details regarding a **single**

3

container of sunscreen his entire family used, identified as "Neutrogena Beach Defense aerosol sunscreen, SPF 50 bearing lot # 32520E01," which Plaintiff asserts "was contaminated with dangerously high levels of the carcinogen Benzene." *Id.* at ¶ 32. However, as further discussed below, this allegation undermines Plaintiff's position, as the lot Plaintiff identifies is not one that was tested by Valisure or incorporated in the Citizen Petition. Thus, there is no support for his contention that this single can of sunscreen actually contained benzene. Nor is there support that any other, unidentified can of sunscreen allegedly used by Decedent[1] contained benzene, let alone "dangerously high levels of carcinogen Benzene." *Id.* Indeed, the very opposite is true based upon the totality of the allegations in the Complaint. *See* Section II.C (demonstrating that the only sunscreen products that could conceivably be accepted as having contained benzene are those that were tested by Valisure—and this lot was not).

At bottom, Plaintiff has failed to plausibly allege that any sunscreen his son used, yet unknown to Defendants, actually contained benzene—the alleged defect at the core of each of the claims in the Complaint. Rather, Plaintiff appears to rely on the inaccurate presumption that because there was a recall of certain lots of JJCI's sunscreen products (*id.* at ¶ 43), all sunscreen products Decedent may have used contained benzene at alleged concentrations sufficient to have caused his injury and death. Plaintiff's allegations amount to nothing more than a false syllogism that sidesteps the core questions at the crux of his claims—***which*** products did Decedent use and ***did*** they contain benzene? Those questions can only begin to be answered with product

---

[1] Plaintiff alleges that he and his family used the sunscreen products purportedly at issue from 2009 until late-2021. Compl. at ¶ 28. However, based on the allegations asserted, Plaintiff's son would have been approximately two years old in 2009 and had already passed away by late-2021, so it is unclear from the pleadings when Decedent began using (or stopped using) each sunscreen product, how much of any sunscreen product was used, or any detail beyond a conclusory contention that sunscreen use was a "continuous and routine practice for the family." *Id.* at ¶ 31.

4

identification information, and this Court should reject Plaintiff's invitation to make inferential leaps where he has failed to plead even the most basic elements of the asserted claims.

Three federal courts have recently rejected nearly-identical claims stemming from alleged use of aerosol products identified in Valisure Citizen Petitions. In a remarkably similar case recently dismissed with prejudice by the Northern District of California, a plaintiff asserted claims individually and on behalf of a putative class of unnamed individuals who allegedly experienced undefined personal injuries from their purported use of Neutrogena® sunscreens. *See Bodle v. Johnson & Johnson Consumer Inc.*, No. 21-cv-7742 (N.D. Ca. Feb. 24, 2022) (annexed hereto as **Exhibit A**). On a motion to dismiss for failure to state a claim, the *Bodle* court held that plaintiff failed to "establish injury or causation as required to sustain *any* of [her] claims because [she] ha[d] not plausibly alleged that (a) she ever purchased or used an allegedly contaminated sunscreen product, (b) that she was exposed to an allegedly contaminated sunscreen product at a level and for a duration that could plausibly cause her disease, nor (c) that she was diagnosed with AML *after* she used an allegedly contaminated sunscreen product." *Id.* at 1 (emphasis original). In *Bodle*, even though plaintiff had identified the sunscreen she used by name, that was still "[in]sufficient for the [c]ourt to draw an inference that she used an allegedly contaminated product." *Id.* at 3. The court reasoned that although benzene was detected in a **certain lot** number and UPC code of a batch of sunscreen of the same product line identified, "Plaintiff [did] not allege that she purchased or used such a product with a corresponding Lot or UPC number or a matching expiration date" and failed to "allege any facts at all as to **when** she purchased the product she identifies." *Id.* Thus, the Court was "unable to draw an inference [that she] used a benzene-contaminated product." *Id.*

In another similar case out of the District of New Jersey, a plaintiff's allegations that his AML was caused by exposure to benzene from deodorant sprays was similarly rejected. *Brief v.*

5

*Idelle Labs, Ltd.*, No. 2:22-cv-05085, 2023 WL 2860345 (D.N.J. April 10, 2023). There, the court reasoned that because benzene had been detected in only certain batches of deodorant spray products, and (like here) there had been "significant variability" between batches and "not even all the samples tested [] contained benzene," it could not infer that the products allegedly used by plaintiff—which had not been identified by lot number—contained benzene. *Id.* at *2.

In yet a third jurisdiction resolving similar issues, the Eastern District of Louisiana recently determined that a plaintiff's allegations regarding use of a certain type of spray antiperspirant, of which Valisure tested some batches, was insufficient to establish benzene exposure or causation. *See Rooney v. Procter and Gamble Company*, No. 22-1164, 2022 WL 17092124, at *4 (E.D. La. November 21, 2022) ("That two batches of the kind of antiperspirant product [plaintiff] used allegedly contained benzene does not render plausible plaintiff's assertions that [she] herself was exposed to benzene.").

Here, as in *Bodle*, *Brief*, and *Rooney*, Plaintiff fails to identify sunscreen products Decedent allegedly used with requisite specificity required for the Court to infer that Decedent used a benzene-containing product. As in *Bodle,* "[a]t most, Plaintiff alleged only that . . . JJCI 'sold[] products that *may* contain dangerous levels of benzene. . ." which is "insufficient to establish a plausible claim that [plaintiff] purchased a contaminated product" later used by Decedent. Exhibit A at 3 (*Bodle*)*.* Even applying the most liberal pleading requirements, Plaintiff fails to allege facts sufficient to state a claim and the Complaint must be dismissed.

### C. Plaintiff's Reliance on Documents Referenced in his Complaint is Unavailing

Plaintiff's purported reliance on the Valisure Citizen Petition and JJCI's voluntary recall

6

of certain sunscreen products is misplaced for several reasons. First, the Valisure Petition,[2] issued more than a month after his son was diagnosed with AML, cannot support Plaintiff's conclusory claims that the "Defective Sunscreen Products" were contaminated with benzene. The Petition states that benzene was detected only "in ***certain*** sunscreen product ***batches***." Compl. at ¶ 40 (emphasis added). Plaintiff suggests that Valisure tested only sunscreen products "manufactured by Defendants, including those at issue here." *Id.* However, the Petition includes tables of Valisure's test results, identifying various sunscreen products by brand, product line, type (lotion or spray), SPF value, lot number, expiry date, and active ingredients, along with the amount of benzene detected, if any, in the specific lots sampled. *See generally* Exhibit B. The only sunscreen product that could plausibly be identified as "at issue here" is the one identified by Plaintiff as "Beach Defense" bearing Lot No. 32520E01—but this lot does **not** appear in the Valisure Citizen Petition at all. *See Brief*, 2023 WL 2860345, at *3 (rejecting plaintiff's argument that a UPC number—which does not otherwise correlate to a specific batch of product tested for benzene— would be sufficient to establish product identification or causation).

Second, Plaintiff asserts that Valisure "petitioned the FDA to force a recall", without further clarification. Compl. at ¶ 45. A plain reading of the May 24, 2021 Citizen Petition reveals

---

[2] Plaintiff's citation to the May 24, 2021 Valisure Citizen Petition in footnote 9 of the Complaint directs Defendants and this Court to an unrelated and irrelevant petition related to Dry Shampoo Products, which is not at issue in this action. Defendants presume in good faith that this was inadvertent error by the Plaintiff and refer the Court to the proper Valisure Citizen Petition related to sunscreen products, annexed hereto as **Exhibit B** for reference. To the extent there is any concern regarding the introduction of extrinsic evidence, Defendants submit that the Court may consider on a motion to dismiss matters of public record (*Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); documents attached to or incorporated by reference in a complaint (*Sun Chems. Trading Corp. v. CBP Res., Inc.*, No. 1:01CV00425, 2004 WL 1777582, at *3 (M.D.N.C. June 3, 2004)(citations omitted)); and may take judicial notice of facts that are not subject to reasonable dispute which are either "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *Id.* Thus, this Court may consider the Valisure Petition which Plaintiff referenced throughout his Complaint.

that Valisure only "request[ed] a recall of identified batches of sunscreen products", not a recall of all sunscreen products manufactured by Defendants. *See* Exhibit B at 2.[3]

Importantly, JJCI's recall of certain Neutrogena product lines was **voluntary,** not **mandated,** and nowhere in its recall notice does JJCI report that that the recall included "23,483,048 aerosol cans contaminated with Benzene." Compl. at ¶ 43. Rather, JJCI's recall notice specifically states that "[w]hile benzene is not an ingredient in any [JJCI] sunscreen products, it was detected in *some samples of the impacted aerosol* sunscreen finished products." *See* Copy of JJCI's recall notice, annexed hereto as Exhibit C, at 2 (emphasis added).[4] Plaintiff's suggestion that a product recall is evidence of a defect is incorrect, as a matter of law. *See Garcia v. Volkswagen Group of America, Inc.*, Civil Action No. 1:19-cv-331, 2022 WL 2542291, at *9 (E.D.

---

[3] *See also id.* at 10 (Petition recommended "recalls on the *affected batches* of products"); 15-16 ("This Petition seeks to have the Commissioner and FDA request recalls for the *identified batches of sunscreen products*" referring to just "40 batches" of sunscreen products identified in its Petition and noting that "there is *significant batch-to-batch variation in benzene content, but many batches of sunscreen contain no detectable benzene* and thus recalls should not overly burden the distribution chain or impact the availability of the sunscreen for use by the public."); 17 ("Valisure would maintain that it is important for information provided to the public to clarify and underscore that this contamination *has not been detected in all sunscreen products* and that unadulterated sunscreen products are available and should continue to be utilized.") (emphasis added).

[4] Plaintiff does not attach a copy of the recall notice or otherwise cite to same in his Complaint. Nevertheless, the Court may consider JJCI's recall notice as it is central to Plaintiff's case. *See Clark v. BASF Salaried Employees' Pension Plan*, 329 F. Supp. 2d 694, 699 (W.D.N.C. 2004) (citations omitted) (noting that a plaintiff's failure to incorporate by a reference or attach a document central to its complaint does not preclude defendant's ability to submit an indisputably authentic copy to the court to be considered on a motion to dismiss). If the rule were otherwise, Plaintiff's deficient claims could survive a motion to dismiss simply by virtue of his failure to attach a dispositive document, which is otherwise misconstrued throughout his pleading. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). Equally important is the proposition that although the Court must accept all well-pleaded facts, it must not accept as true allegations that are contradicted by acceptable exhibits or judicially noticeable facts. *See Norman v. Tradewinds Airlines, Inc.*, No. 1:02cv918, 2003 WL 22012625, at *1 n.1 (M.D.N.C. June 13, 2003) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). Here, the judicially noticeable documents Plaintiff references in his Complaint contradict his stated allegations and should govern.

Va. July 7, 2022) ("a general recall is not evidence that any of the plaintiffs' [products] possessed some defect"); *Burbank v. BMW of N. Am., LLC*, Civ. No. 21-01711, 2022 WL 833608, at *9 (D.N.J. March, 21, 2022) ("the mere existence of a recall does not prove that any individual's vehicle actually contained a nonconformity."); *Redford v. SC Johnson & Son, Inc.*, 437 F. Supp. 2d 391, 397 (D. Md. 2006) (a recall notice was not evidence of a defect in an air freshener).

Third, Plaintiff has not plausibly pled that **all** of JJCI's recalled sunscreens contained benzene. Indeed, the **only** products that can be inferred to contain benzene are those specific lots of sunscreen products tested by Valisure and identified in its Citizen Petition. Benzene was not an ingredient in any Neutrogena® sunscreen products. *See* Exhibit C at 2. More importantly, the Valisure Petition itself advises that the "presence of benzene appears to be from contamination in the identified sunscreen products" and that "[t]here was ***significant variability from batch to batch, even within a single brand, underscoring the importance of batch-level chemical analysis***[.]" *See* Exhibit B at 8 (emphasis added). Plaintiff has failed to allege that Decedent used any batch of sunscreen in which benzene was actually detected (i.e., with a corresponding product line, lot number, UPC code, matching expiration date, or otherwise) and thus has failed to plausibly plead that any product Decedent used ever contained benzene.

### D. Plaintiff Fails to Plausibly Allege Causation

Even if Plaintiff were able to identify a product Decedent actually used, he has not plausibly traced any injury to JJCI's conduct. Rather, Plaintiff merely makes a conclusory jump to assert that Decedent's "untimely death was a result of repeated and continuous exposure to [] Defective Sunscreen Products, which were contaminated with benzene." Compl. at ¶ 38. Plaintiff fails to adequately plead the timing of Decedent's diagnosis compared to his use of any ***benzene-containing*** sunscreen products to establish a plausible causal chain. Indeed, the Complaint fails to

9

plausibly plead that *all* of JJCI's sunscreen products have consistently contained benzene, or that the benzene content in *any* sunscreen product allegedly used caused Decedent to be exposed to sufficient concentrations of benzene to have caused his illness. Additionally of note, the Valisure Petition states that "benzene has long been directly associated with cancer in humans and classified as a 'known human carcinogen' with ***persistent exposure*** as low as .8 ppm." *See* Exhibit B at 6 (emphasis added). Even assuming that Decedent ***had been*** exposed to benzene from a benzene-containing sunscreen product, Plaintiff still fails to assert when that exposure happened or that any such exposure was at a level or "persistent" enough to have caused Decedent's injury. *See Brief*, 2023 WL 2860345, at *3 (plaintiff's claim of "regular" use for "many years" insufficient where plaintiff failed to allege facts to show that plaintiff's exposure to benzene was at a level sufficient to have caused his disease). Thus, as in *Brief*, Plaintiff's Complaint fails to plausibly plead that Decedent's diagnosis was ***caused by*** his use of ***benzene-containing*** sunscreen products, which is fatal to the claims asserted.

### E. Plaintiff's Claims Fail Independently as a Matter of Law

#### i. Plaintiff Does Not Plausibly Plead Product Identification or Causation, and Therefore Cannot Establish Essential Elements of his Claims.

Under North Carolina law, "the elements of a product liability claim sounding in tort are satisfied where the plaintiff demonstrates (1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." *See City of High Point v. Suez Treatment Sols. Inc.,* 485 F. Supp. 3d 608, 629 (M.D.N.C. 2020). As set forth above, Plaintiff has not plausibly pleaded product identification or causation and thus cannot establish the essential elements of his claims. *See e.g., Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961 (E.D.N.C. 2015) (citing N.C.G.S.A. § 99B-1 et seq.) (as to Count I – Product Liability – Design Defect, identifying proximate cause as a

10

necessarily element where a product liability claim under North Carolina sounds in tort); *City of High Point*, at 629 (M.D.N.C. 2020) (as to Count III – Negligence/Negligent Design, Manufacture & Sale, noting that proximate causation is a required element to prevail on a common law negligence claim under North Carolina law); *Lightfoot v. Georgia-Pac. Wood Prod., LLC*, 441 F. Supp. 3d 159 (E.D.N.C. 2020), *aff'd,* 5 F.4th 484 (4th Cir. 2021) (citing N.C. Gen. Stat. § 99B-5) (as to Count IV – Negligent Failure to Warn, noting that product liability and negligence claims based upon a failure to warn require essential element of causation); *Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1019 (E.D.N.C. 2015), *aff'd*, 674 F. App'x 250 (4th Cir. 2016) (citing N.C. Gen. Stat. § 75–1) (as to Count VI - Violation of Consumer Protection Laws, indicating that proof "Defendant's act proximately caused the plaintiff's injury" is required to state a claim for unfair or deceptive acts under the North Carolina Unfair and Deceptive Practices); *Kiser v.Tractor Supply Co.*, Civil No. 1:21-cv-00042, 2013 WL 1623609, at *3 (W.D.N.C. April 15, 2013) (as to Count VII - Breach of Implied Warranty of Merchantability, indicating that the claim for breach of implied warranty requires a showing that the specified defect in defendant's product caused injury).

> ii. Plaintiff's Claim for Strict Liability (Count II) Fails as North Carolina Does Not Recognize this Theory.

Even viewing the facts in the light most favorable to Plaintiff, North Carolina does not recognize strict liability in product liability cases. *See Stoddard v. Wyeth, Inc.*, 630 F. Supp. 2d. 631, 632 (E.D.N.C. 2009) (citing *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504 (1980) (refusing to adopt the rule of strict liability in product liability cases)); N.C. Gen. Stat. § 99B-1.1 ("There shall be no strict liability in tort in product liability actions."). Thus, Plaintiff's claim for strict liability must be dismissed, as a matter of law.

iii. Plaintiff's Claim for Breach of Implied Warranty of Fitness (Count VIII) Fails under North Carolina Law.

Plaintiff's claim for breach of implied warranty of fitness for a particular purpose also fails as a matter of law. Under North Carolina law, "[o]rdinary use of a product forecloses recovery" under this theory. *McDonald Bros., Inc. v. Tinder Wholesale, LLC*, 395 F. Supp. 2d 255, 266 (M.D.N.C. 2005); *see also Foyle By and Through McMillan v. Lederle Labs.*, 674 F. Supp. 530, 535 (E.D.N.C. 1987)(denying claim under North Carolina law where plaintiff used a vaccine for its intended purpose of preventing the contraction of a disease); *Halprin v. Ford Motor Co.*, 420 S.E.2d 686 (1992) (denying claim where a plaintiff used his truck only for general everyday purposes). Decedent's use of sunscreen products generally, as described in the Complaint, constitute the intended use of the products, and thus this claim must be dismissed.

iv. Plaintiffs' Claim for Misrepresentation (Count V) Fails to Meet the Requisite Heightened Pleading Standard.

Rule 9(b) of the Federal Rules of Civil Procedure requires a plaintiff who alleges a claim for fraud to "state with particularity the circumstances constituting fraud or mistake." *See Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 798 (E.D.N.C. 2019), *aff'd sub nom. Fitzgerald Fruit Farms, LLC v. Harris*, 858 F. App'x 625 (4th Cir. 2021); Fed. R. Civ. P. 9(b). Thus, under Rule 9(b), a party must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what they obtained thereby. These facts are often referred to as the who, what, when, where, and how of the alleged fraud." *Id.* (citations omitted); *see also Angell v. Kelly*, 336 F. Supp. 2d 540, 548 (M.D.N.C. 2004) (identifying requisite elements of misrepresentation claim under North Carolina law, including, "(1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth;

(4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; (6) that [thereby] resulted in damage to the injured party."). Far from asserting any specific facts to support his claim, Plaintiff here alleges in a conclusory fashion that "Defendants falsely and fraudulently presented to the public that the Defective Sunscreen Products had been tested and were safe and effective" (Compl. at ¶ 118); "Defendants knew and/or had reason to know that those representations were indeed false" (*id.* at ¶ 119); "Defendants knew and had reason to know that the Defective Sunscreen Products could and would cause serious injury" (*id.* at ¶ 125), among other similar boilerplate allegations. While Plaintiff generally claims these statements were "presented to the public," conspicuously absent are any specific statements or omissions purportedly made by Defendants on which Decedent and/or Plaintiff purportedly relied. Plaintiff does not identify how or when JJCI purportedly obtained knowledge of the alleged defect, nor does Plaintiff identify the "time and place" any misrepresentations were allegedly made to the Plaintiff or Decedent, or the "content of such statements and the manner in which they misled" Plaintiff or Decedent. *See Fitzgerald*, 527 F. Supp. 3d 790, 798. Plaintiff also fails to identify when he actually purchased any sunscreen products, such that he could demonstrate reliance on any alleged misrepresentations prior to purchase. Without these factual allegations, Plaintiff does not, and cannot, plausibly allege a claim for misrepresentation. Accordingly, Plaintiff's misrepresentation claim should be dismissed for failure to satisfy the heightened pleading requirements of Rule 9(b).

    v. Plaintiff's Claim for Loss of Filial Consortium (Count IX) Fails as a Matter of Law.

As Plaintiff's underlying claims fail, Plaintiff's derivative claim also fails. Significantly, North Carolina does not recognize a claim for loss of consortium outside of a marital relationship. *See Laughter v. Aventis Pasteur, Inc.*, 291 F. Supp. 2d 406, 412 (M.D.N.C. 2003) (quoting

*Edwards v. Edwards*, 259 S.E.2d 11, 15 (1979) ("[t]he relation of parent and child supports no legal right similar to that of consortium")). Thus, Plaintiff's claim for loss of consortium must be dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety.

This the 16th day of June, 2023.

                                      ELLIS & WINTERS LLP

                                      /s/ Dixie T. Wells
                                      Dixie T. Wells
                                      N.C. State Bar No. 26816
                                      Post Office Box 2752
                                      Greensboro, North Carolina 27402
                                      Telephone: (336) 217-4197
                                      Facsimile: (336) 217-4198
                                      dixie.wells@elliswinters.com

                                      BARNES & THORNBURG LLP

                                      Robyn S. Maguire (pro hac vice forthcoming)
                                      One Marina Park Drive, Suite 1530
                                      Boston, MA 02210
                                      Telephone: (617) 316-5316
                                      Facsimile: (617) 316-5311
                                      robyn.maguire@btlaw.com

                                      Nadine S. Kohane (pro hac vice forthcoming)
                                      390 Madison Avenue, 12th Floor
                                      New York, NY 10017
                                      Telephone: (646) 746-2000
                                      Facsimile: (646) 746-2001
                                      nadine.kohane@btlaw.com

                                      Counsel for Defendants

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that this brief complies with the word limit requirements of Judge Whitney's Standing Order Governing Civil Case Management, 3(b)(iv). In making this certification, the undersigned has relied upon the word count feature of word processing software.

This the 16th day of June, 2023.

/s/ Dixie T. Wells
Dixie T. Wells

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on this day, I have electronically filed the foregoing document with the Clerk of the United States District Court for the Western District of North Carolina using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 16th day of June, 2023.

/s/ Dixie T. Wells
Dixie T. Wells